1

2

3

4                           UNITED STATES DISTRICT COURT

5                                  DISTRICT OF NEVADA

6    ROBERT EARL JONES,                          3:13-cv-00187-RCJ-WGC

7                               Plaintiff,        **REPORT & RECOMMENDATION OF**
                                                  **U.S. MAGISTRATE JUDGE**
8           v.

9    SHERYL FOSTER, et. al.,

10                             Defendants.

11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14   28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15   Plaintiff's Motion for Preliminary Injunction in Support of his 42 U.S.C. § 1983 Civil Action.

16   (Doc. # 16.)[1] Defendants filed a response. (Doc. # 17.) Plaintiff filed a reply brief. (Doc. # 22.)

17          After a thorough review, the court recommends that Plaintiff's motion be denied.

18                                      **I. BACKGROUND**

19          At all relevant times, Plaintiff was in custody of the Nevada Department of Corrections

20   (NDOC). (Pl.'s Am. Compl., Doc. # 8 at 1.) Plaintiff, a pro se litigant, brings this action pursuant

21   to 42 U.S.C. § 1983. (*Id.*) The events giving rise to this action took place while he was housed at

22   Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Deputy Director of NNCC

23   Sheryl Foster, Associate Warden of Programs at NNCC Lisa Walsh, and Head NNCC

24   Caseworker Shannon Moyle. (*Id.* at 2.)

25          In this action, Plaintiff alleges that he is Muslim, that he applied to receive a Halal diet, or

26   in the alternative, a kosher diet; either diet would comply with his faith. He avers that the prison

27   chaplain approved his alternative request pending receipt of kosher meals; however, the acting

28   _____
            [1] Refers to court's docket number.

1    associate warden of programs at NNCC told Muslim inmates that only Jewish inmates could
2    receive the kosher diet. (Doc. # 8 at 3, 5-8.)

3        He alleges that while he was notified (seven months after he applied for the religious
4    diet) that he had been approved and placed on a waiting list pending shipment of more kosher
5    meals, but as of the time he filed the Amended Complaint, he had not received his kosher or
6    Halal meal, even though other Muslim inmates had, and was told Muslims had been removed
7    from the kosher list and the meals would only be given to Jewish inmates. (Doc. # 8 at 3-4, 9.)
8    He contends that he was forced to take what is known as a Common Fare kosher meal (Common
9    Fare Meal), but this is not adequate for what his faith requires. (*Id*. at 4, 9.)

10       He contends that he pursued grievances and that Defendants, who denied his grievances,
11   were in positions to place him on a kosher diet. (*Id*. at 3, 5-8, 10-15.)

12       He alleges, and was permitted to proceed on screening, with claims that Defendants
13   violated the First Amendment, the Religious Land Use and Institutionalized Persons Act
14   (RLUIPA), 42 U.S.C. § 2000cc, et. seq., and the Equal Protection Clause of the Fourteenth
15   Amendment. (Screening Order, Doc. # 4.)[2]

16       Plaintiff has filed this Motion for Preliminary Injunction seeking an order that Defendants
17   immediately provide him with a Halal meal consistent with his Muslim faith and the tenets of the
18   Quran, or alternatively (or until a Halal meal is available) a kosher diet. (Doc. # 16 at 3.)

19                              **II. LEGAL STANDARD**

20       The purpose of a preliminary injunction or temporary restraining order is to preserve the
21   status quo if the balance of equities so heavily favors the moving party that justice requires the
22   court to intervene to secure the positions until the merits of the action are ultimately determined.
23   *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an
24   "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S.
25   674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the

26   _____

27       [2] Plaintiff has filed a motion for leave to amend to add two NDOC culinary employees as Defendants.
28   (Doc. # 26, Doc. # 26-1.) The motion is not yet fully briefed, but the court has reviewed it and determined it does
     not have an impact on the court's analysis of this motion; therefore, the court need not decide the motion for leave to
     amend before proceeding with its analysis relative to the motion for injunctive relief.

competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious

1    about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d

2    670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is

3    not to be granted unless both the facts and the law clearly favor the moving party and extreme or

4    very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir.

5    1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

6         Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must

7    satisfy additional requirements when seeking preliminary injunctive relief against prison

8    officials. The PLRA provides, in relevant part:

9         Preliminary injunctive relief must be narrowly drawn, extend no further than
          necessary to correct the harm the court finds requires preliminary relief, and be

10        the least intrusive means necessary to correct that harm. The court shall give
          substantial weight to any adverse impact on public safety or the operation of a
          criminal justice system caused by the preliminary relief and shall respect the

11        principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

12   18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary

13   injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998

14   (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of

15   federal courts and to protect the bargaining power of prison administrators-no longer may courts

16   grant or approve relief that binds prison administrators to do more than the constitutional

17   minimum." *Id.* at 999.

18

19                                   **III. DISCUSSION**

20
     **A. Plaintiff's Argument (Doc. # 16)**
21
          Plaintiff seeks an order that Defendants immediately provide him with a Halal meal
22
     consistent with his Muslim faith and the tenets of the Quran, or alternatively (or until a Halal
23
     meal is available) a kosher diet. (Doc. # 16 at 3.)
24
          First, Plaintiff contends that he is likely to succeed on the merits of his claims because
25
     Defendants have denied him the Halal or kosher diet that is already being served to other Muslim
26
     and Jewish inmates at NNCC. (*Id.*)
27
          Specifically, he contends that seven months after he applied for the religious meal, he
28
     was informed by NNCC Chaplain Hummel that he had been approved on June 20, 2011, and was

                                          - 4 -

placed on a waiting list pending shipment of more kosher meals, however, as of July 22, 2011, and at the time he filed his motion, he had yet to receive a kosher or Halal meal, while other Muslim inmates have. (*Id*.) He argues that the Ninth Circuit has held that an inmate has a right to a diet consistent with his religious beliefs. (*Id*., citing *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987); *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997); *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 5 (2005); *Shakur v. Schriro*, 514 F.3d 878-90 (9th Cir. 2008)).

Second, he claims that he is likely to suffer irreparable injury in the absence of an injunction. (Doc. # 16 at 4.) He contends that he makes such a showing by stating a colorable First Amendment claim. (*Id*., *citing San Martano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002)). He claims that until he is provided with the proper meal, he will continue to suffer irreparable injury. (*Id*.)

Third, he argues that the balance of equities tip in his favor. (*Id*. at 5.) He asserts that his suffering outweighs any harm experienced by Defendants if injunctive relief is not granted because Defendants are already serving kosher meals to other inmates at NNCC. (*Id*.)

Finally, Plaintiff contends that the relief sought is in the public interest because it is always in the public interest for prison officials to obey the law, and follow the Constitution. (*Id*.)

**B. Defendants' Response (Doc. # 17)**

Defendants contend that Plaintiff's motion should be denied because Plaintiff has been receiving a Common Fare Meal since November 2012, and this is a certified kosher diet designed to meet the dietary guidelines of inmates requiring either Halal or kosher meals. (Doc. # 17 at 1; Doc. # 17-1 (Walsh Decl.) ¶ 7.) According to Defendants, the Common Fare Meal is the only religious diet offered to inmates at NNCC. (*Id*.) Both Jewish and Muslim inmates who request a religious diet are given the Common Fare Meal. (*Id*. ¶¶ 8-9.)

Defendants provide a certification letter sent from Rabbi Yisroel Rosskamm to NDOC which certifies that the Common Fare diet at ESP, FMWCC, HDSP, LCC, NNCC, and SDCC are prepared under the supervision of the Scroll K/Vaad Hakashrus of Denver and is certified kosher. (Doc. # 17-2.)

Plaintiff submitted a request for a "Halal/Common Fare" meal to meet the religious needs of his Muslim/Islam faith group on November 13, 2012, and this request was approved by Chaplain Stogner on November 15, 2012. (Doc. # 17-1 (Walsh Decl.) ¶ 10; Doc. # 17-3.) In addition, he filled out and submitted a State of Nevada/NDOC Common Fare Agreement wherein he acknowledges the guidelines for participating in the Common Fare program. (Doc. # 17-1 (Walsh Decl.) ¶ 12; Doc. # 17-4.) Plaintiff had received the Common Fare Meal since he submitted his request in November 2012. (*Id.* ¶ 15.) He acknowledges in his complaint and motion that he will accept either a Halal or kosher meal being served at NNCC. (Doc. # 17 at 4.)

As such, Defendants contend Plaintiff has failed to demonstrate he will suffer any harm, and that Plaintiff's request for injunctive relief is moot as he currently receives the Common Fare Meal. (Doc. # 17 at 4.)

**C. Plaintiff's Reply (Doc. # 22.)**

In his reply, Plaintiff states that he was forced to apply for the Common Fare Meal as a substitute for the traditional kosher/Halal meals that were being served to the Jewish inmates, but maintains that the Common Fare Meal is not an adequate kosher meal that meets the dietary requirements of his Muslim faith. (Doc. # 22 at 4.)

Plaintiff contends that the outside expert consulted to certify the meal meets kosher dietary requirements is "a questionable certified Rabbi of Jewish Faith." (*Id.* at 6.) He contends this person is not an expert in the Muslim faith to provide proper certification of a Halal diet. (*Id.*) He further contends that the Aleph organization has never recognized the Common Fare meal as kosher. (*Id.*)

**D. Legal Standards for Plaintiff's Claims**

Plaintiff asserts claims under the First Amendment's Free Exercise Clause, RLUIPA, and the Equal Protection Clause. The court will discuss the legal standard for each of his claims, in turn.

**1. First Amendment's Free Exercise Clause**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of

1  religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)

2  (citations and quotation marks omitted, alteration original). "The right to exercise religious

3  practices and beliefs does not terminate at the prison door. The free exercise right, however, is

4  necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

5  legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196,

6  197 (9th Cir. 1987) (per curiam); *see also  O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348

7  (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*,

8  514 F.3d 878, 883-84 (9th Cir. 2008). To implicate the free exercise clause, a prisoner must

9  establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at

10  884-85.

11       In analyzing the legitimacy of regulation of a prisoners' religious expression, the court is

12  instructed to utilize the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone*, 482

13  U.S. at 349; *Shakur*, 514 F.3d at 884. The *Turner* factors are: (1) "there must be a 'valid, rational

14  connection' between the prison regulation and the legitimate governmental interest put forward

15  to justify it"; (2) "whether there are alternative means of exercising the right that remain open to

16  prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on

17  guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence

18  of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-

19  91.

20       The Ninth Circuit has held that inmates "have the right to be provided with food

21  sufficient to sustain them in good health that satisfies the dietary laws of their religion." *Ward v.

22  Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). These protections, however, are necessarily limited by

23  the fact of incarceration, and can be restricted to achieve legitimate penological goals and

24  maintain prison security. *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *O'Lone v.

25  Shabazz*, 482 U.S. 342, 348 (1987).

26       **2. RLUIPA**

27       Section 3 of RLUIPA provides:

28       No government shall impose a substantial burden on the religious exercise of a
         person residing in or confined to an institution...even if the burden results from a
         rule of general applicability, unless the government demonstrates that imposition

of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

"The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v. *Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). However, "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Hartmann v. Cal. Dep't. of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (internal quotation marks and citation omitted).

"Under RLUIPA, [the plaintiff] bear[s] the initial burden of persuasion on whether [a] [p]olicy 'substantially burdens' [his or her] 'exercise of religion.'" *Hartmann*, 707 F.3d at 1124 (citing 42 U.S.C. § 2000cc-2(b)). Thus, the court must begin by "identifying the 'religious exercise' allegedly impinged upon.'" *Greene*, 513 F.3d at 987. "Religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Greene*, 513 F.3d at 987 (quoting *Cutter*, 544 U.S. at 725 n. 13; 42 U.S.C. § 2000cc-5(7)(A)).

"[T]he 'exercise of religion' often involves not only the belief and profession but the performance of...physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter*, 544 U.S. at 720 (internal citation and quotation marks omitted); *see also Greene*, 513 F.3d at 988 (concluding group worship was the "religious exercise" at issue).

1      Next, the court must address "whether the prison regulation at issue 'substantially

2 burdens' that religious exercise." *Greene*, 513 F.3d at 987. A "substantial burden" on "religious

3 exercise" "must impose a significantly great restriction or onus upon such exercise." *Id*. (quoting

4 *San Jose Christian Coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "In the

5 context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has

6 held that a substantial burden occurs 'where the state...denies [an important benefit] because of

7 conduct mandated by religious belief, thereby putting substantial pressure on the adherent to

8 modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (quoting *Warsoldier*

9

10 *v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)) (internal quotation marks omitted). However, a

11 prison is not required "to pay for an inmate's devotional accessories." *Cutter*, 544 U.S. at 720, n.

12

13 8 (citation omitted).

14      If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the

15 court's analysis then turns to whether the defendant has established that the burden furthers "a

16 compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. §

17 2000cc-1(a), (b); *Greene*, 513 F.3d at 988. Prison safety and security have been found to

18 constitute "compelling governmental interest[s]." *Cutter*, 544 U.S. at 725 n. 13; *Greene*, 513

19

20 F.3d at 988.

21      While prison administrators are "accorded deference with regard to prison security," they

22 must establish that they "actually considered and rejected the efficacy of less restrictive measures

23 before adopting the challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier*, 418 F.3d

24 at 999) (internal quotation marks omitted). "[I]n light of RLUIPA, no longer can prison officials

25 justify restrictions on religious exercise by simply citing the need to maintain order and security

26 in a prison. RLUIPA requires more." *Id*. at 989-90.

27

28

### 3. The Equal Protection Clause

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann*, 707 F.3d at 1123, citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citations omitted). The Plaintiff must establish that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Id.* (citations and internal quotation marks omitted).

### E. Analysis

### 1. Likelihood of Success on the Merits

Plaintiff's motion focuses on his claim that his religious rights continue to be violated because the Common Fare Meal he is receiving does not comport with his religious beliefs. Plaintiff may be able to demonstrate a likelihood of success on the merits of his case to the extent he claims his religious rights were violated when he was completely deprived of a kosher or Halal meal from the time he first submitted his request for a Halal or kosher meal in November 2010 until he began to receive the Common Fare Meal in November 2012. That is not the focus of his request for injunctive relief as this juncture, and therefore, the court need not address whether Plaintiff actually has established a likelihood of success on the merits as to that portion of his claim. Insofar as he claims that his rights continued to be violated once he was provided with the Common Fare Meal, from November 2012 forward, the court finds he has not established a likelihood of success on the merits justifying the issuance of a preliminary injunction.

Plaintiff does not address Defendants contention that there is only one religious dietary meal available at NNCC- the Common Fare Meal, and that this is given to both Jewish and

Muslim inmates who request it, and is designed to be sufficient for those inmates who require either a kosher or Halal meal. In other words, he asserts that he received the Common Fare Meal while Jewish inmates received a kosher meal, but does not provide any support to contradict the sworn statement provided by Defendants that only one religious dietary meal is provided at NNCC.

Plaintiff asserts that the rabbi who certified the kosher meal is not an expert in the Muslim faith and is not in a position to determine whether a meal is certified as a Halal diet; however, Plaintiff's complaint and motion for injunctive relief both acknowledge that he would accept a kosher meal as an alternative to a Halal meal. He contends that the Aleph organization has never recognized the Common Fare Meal as kosher, but provides no support for this contention. Nor does he present an argument that specifically addresses how the rabbi's certification of the Common Fare Meal is deficient.

Similarly, Plaintiff provides a conclusory statement that the Common Fare Meal does not meet the requirements of his Muslim faith, but in no way explains *how or why* it is deficient. He provides no evidence to dispel the contradiction between his admission that a kosher meal meets with his satisfaction, on the one hand, and his general conclusion that the Common Fare Meal (which is certified kosher) is deficient, on the other hand.

The court does not doubt Plaintiff has a sincerely held religious belief which requires certain dietary restrictions; however, he admits that a kosher meal satisfies his religious tenets. Had Plaintiff provided an explanation supported by evidence as to why the kosher certification of the Common Fare Meal is deficient and why it does not stand up to his religion's requirements, the court's analysis might have been different.[3]

---

[3] In the *Ackerman* case Plaintiff references, for example, when District Judge Navarro granted the motion

1
2
3
4
5
6

In sum, Plaintiff has not demonstrated that continuing to be served a Common Fare Meal in lieu of a Halal meal (or other kosher meal) constitutes a substantial burden on the exercise of his religious beliefs so as to violate RLUIPA. His own complaint admits that he would accept a kosher meal, and he provides no real explanation as to why the Common Fare Meal, which has been certified kosher by a Jewish rabbi, is deficient.

7
8
9
10
11
12
13

Nor has he established that NNCC's practice of serving the Common Fare Meal violates the First Amendment because the practice is not reasonably related to legitimate penal interests under a *Turner* analysis. Presumably Defendants' interest is in providing a simplified food service at a reasonable cost to the institution while taking into account the accommodation of the religious rights of inmates. Plaintiff presents no argument to refute any purported legitimate interest the prison has in serving the Common Fare meal.

14
15
16
17

 The second *Turner* factor considers whether the inmate has alternative means of exercising his religion. Again, this focuses on the availability of the Common Fare meal which Plaintiff did not sufficiently establish as being at odds with his religious beliefs.

18
19
20
21

The third *Turner* factor considers the impact the accommodation would have on guards, inmates and prison resources. While Plaintiff alleges that other inmates are already being provided a kosher meal, he provided no evidence to contradict the sworn statement submitted by

22
23
24
25
26
27
28

for preliminary injunction to stay implementation of the Common Fare Meal plan as to Ackerman only (and then to certain other inmates who elected to continue receiving the Kosher meals they had previously been receiving), the plaintiff provided various sources of kosher authority, along with a declaration from another rabbi, argument as to why the meal was not kosher (*e.g.,* that the method of preparation was not kosher and did not involve the requisite supervision), argument and evidence regarding why the proferred kosher certification was deficient. The defendants provided counter-evidence on these points. Judge Navarro commented that there would be a substantial burden on the plaintiff's ability to exercise his religion if the offered diet was not in fact kosher; however, in this case, Plaintiff has presented no evidence to that effect. (*Ackerman v. State of Nevada Department of Corrections, et. al.,* 2:11-cv-00883-GMN-PAL, Doc. # 104 (transcript of February 10, 2012 hearing). Incidentally, Judge Navarro also decided in *Ackerman* that the plaintiff did not show a likelihood of success on the merits, but the other factors tipped in his favor, and as a result the motion for preliminary injunction was granted. (*Id.* at 97.) The injunction was subsequently dissolved, finding that the balance of equities shifted to the State, that the likelihood of success on the merits was still not strong, and the court was unable to fashion the least restrictive relief was. (2:11-cv-00883-GMN-PAL, Doc. # 234 at 6, 8-9.)

- 12 -

Defendants that there is only one religious dietary option available at NNCC that is supposed to adhere to the tenets of both the Jewish and Muslim faiths—the Common Fare Meal.

The fourth *Turner* factor considers the availability of obvious alternatives. Plaintiff asserts that Defendants could just provide him with a kosher or Halal meal, but once again does not fully address why the Common Fare meal being provided to Jewish and Muslim inmates is insufficient. Nor does he discuss what impact providing him with a kosher or Halal meal would have on the prison. As such, he has not shown a likelihood of success on his First Amendment claim.

Finally, he has not met his burden of substantiating his claim that in serving the Common Fare Meal the Defendants acted with an intent or purpose to discriminate against him because he is Muslim. He asserts that Defendants denied his grievances where he requested a Halal or kosher meal, but provides absolutely no evidence to support an allegation that they intended to discriminate against him because he is Muslim. Therefore, he has not shown a likelihood of success on his equal protection claim.

## 2. Likelihood of Suffering Irreparable Harm

Plaintiff has failed to demonstrate that the Common Fare Meal is not properly certified kosher or provide any explanation as to how it does not comport with his religious beliefs. He admits, however, that a kosher meal is sufficient for his religious dietary needs. Therefore, Plaintiff has not demonstrated a likelihood of suffering irreparable harm in the absence of the issuance of a preliminary injunction while he continues to receive the Common Fare Meal.

## 3. Balance of Hardships and Public Interest

Plaintiff's failure to show he is likely to suffer irreparable harm in the absence of injunctive relief cuts against his argument that the balance of hardships tips in his favor or that an

injunction would be in the public's interest.

**4. Conclusion**

Having failed to establish the prerequisites for injunctive relief, Plaintiff's motion for an injunction order Defendants to immediately provide him with a Halal meal, or alternatively a kosher meal should be denied.

## IV. RECOMMENDATION

 **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Preliminary Injunction in Support of his 42 U.S.C. § 1983 Civil Action (Doc. # 16).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 23, 2014

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

- 14 -